**In the Matter of R.L.H., A Child Alleged to be Delinquent, Appellant–Respondent,**

v.

**STATE of Indiana, Appellee–Petitioner.**

**No. 79A02–0004–JV–262.**

Court of Appeals of Indiana.

Nov. 15, 2000.

**314**

Susan K. Carpenter, Public Defender of Indiana, Amy E. Karozos, Deputy Public Defender, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Robin Hodapp–Gillman, Deputy Attorney General, Attorneys for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

Appellant–Defendant R.H. appeals the juvenile court's true findings that he was a delinquent child for committing two acts that would constitute two convictions for Criminal Mischief if committed by an adult.[1] We affirm in part, reverse in part, and remand with instructions.

### Issues

R.H. raises two issues on appeal which we restate as follows:

I.  Whether there was sufficient evidence to support the juvenile court's true findings; and,

II.  Whether the trial court abused its discretion in ordering R.H. to pay restitution in the amount of $378.50.

### Facts/Procedural History

The facts most favorable to the juvenile court's true findings indicate that in May of 1999, two homes under construction and owned by Lux–Klinker Homes, Inc., were damaged. Both homes were located on Lionheart Lane in Lafayette, Indiana. The home located at 1523 Lionheart Lane had approximately ten holes kicked into the finished drywall. The house located at 1514 Lionheart Lane sustained a broken window and three torn screens. The total damages for the two houses equaled $378.50. Detective Bryan Cummins ("Detective Cummins") from the Tippecanoe County Sheriff's Department received information that led him to believe that two ten-year-old boys, R.H. and C.R. were involved in the incident. After further in-

---

1.  IND.CODE § 35–43–1–2.

vestigation, the Tippecanoe County Deputy Prosecutor filed a Probable Cause Affidavit against R.H. based on Detective Cummins's police report. The juvenile court authorized the filing of a Petition Alleging Delinquency against R.H. and said petition was filed on August 18, 1999. This original Petition Alleging Delinquency, which charged R.H. with two counts of what would be Criminal Mischief if committed by an adult, stated, in Count I, that the damage to the house located at 1514 Lionheart Lane (broken window and torn screens) occurred "[o]n or about May 13, 1999," resulting in a pecuniary loss greater that $250.00 but less than $2,500.00, and, in Count II, that the damage to the house located at 1523 (drywall) was done "[o]n or about May, 1999...." (R. 14–15.) The Petition Alleging Delinquency was later amended on November 3, 1999. In the amended petition, the only significant change was that the damages language was deleted from Count I and added to Count II.

At the fact-finding hearing, C.R. testified that he was with R.H. at the house located at 1523 Lionheart Lane, on or around May 13, 1999, and that he observed R.H. kick approximately ten holes in the house's finished drywall. C.R. further testified that he was surprised when R.H. began kicking the walls and that he tried to stop R.H., but that R.H. just ignored him. C.R. denied being present when the damage was done to the window and screens of the house located at 1514 Lionheart Lane. C.R. did testify, however, that in May of 1999, R.H. told him that he and another youth, R.D., had thrown rocks at the garage of another home under construction on Lionheart Lane and that either R.H. or R.D. had also thrown a brick through one of the windows of the house. Another youth, P.B. also testified that she had overheard R.H. talking to C.R. at the bus stop about the damages done to the houses on Lionheart.

At the conclusion of the fact-finding hearing, the juvenile court found that the evidence presented against R.H. was credible and ruled that R.H. was a delinquent child for having committed two acts that would constitute Criminal Mischief if committed by an adult. Following a subsequent dispositional hearing held on February 10, 2000, R.H. was ordered to pay restitution of $378.50, representing the total amount of damages done to both houses. This appeal ensued.

## Discussion and Decision

### I. Sufficiency of the Evidence

#### Standard of Review

■■■ Our standard of review regarding sufficiency of the evidence claims is firmly established. When the State seeks to have a juvenile adjudicated to be a delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. IND. CODE § 31–37–14–1; see also Al–Saud v. State, 658 N.E.2d 907, 908 (Ind.1995). On appeal, this Court does not reweigh the evidence nor judge the credibility of witnesses, but instead looks to the evidence most favorable to the conviction and to all the reasonable inferences to be drawn therefrom. Toney v. State, 715 N.E.2d 367, 368 (Ind.1999). In other words, we will affirm the conviction if the evidence admitted at trial contains adequate probative value from which the jury could infer guilt beyond a reasonable doubt. Id. at 368–69. Circumstantial evidence is no different than other evidence for this purpose, and standing alone may sufficiently support a conviction. Vest v. State, 621 N.E.2d 1094, 1095 (Ind.1993). Additionally, the uncorroborated testimony of one witness may be sufficient by itself to sustain a conviction on appeal. Toney, 715 N.E.2d at 369.

#### Argument and Analysis

R.H. argues on appeal that the State failed to present sufficient evidence to prove, beyond a reasonable doubt, that he committed two acts that would constitute

Criminal Mischief if done by an adult. Specifically, R.H. claims that with regard to Count I, the State's sole proof that he caused the damage to the house located at 1514 Lionheart Lane was C.R.'s testimony that R.H. told him that either R .H. or R.D. had thrown a brick through the window. Therefore, R.H. concludes that because C.R. couldn't remember which boy was said to have thrown the rock, the State only proved that there was a possibility that R.H. was the person who broke the window and thus the State failed to meet its burden of proof. With regard to Count II, concerning the damage done to the drywall in the house located at 1523 Lionheart Lane, R.H. argues that the State's evidence conclusively showed that the damage done to the house located at 1523 Lionheart Drive was done on May 13, 1999, and that he provided evidence at the fact-finding hearing that he was not at said house with C.R. on May 13, 1999, and therefore could not have committed the charged offense.

### A. Count I—Mere Possibility Or Sufficient Evidence

■ As stated earlier, circumstantial evidence, standing alone, may sufficiently support a conviction. *Vest*, 621 N.E.2d at 1095. However, R.H. is correct when he argues that the evidence supporting a conviction must prove more than a mere possibility that the defendant could have committed the charged offense. *See Freeman v. State*, 458 N.E.2d 694 (Ind.Ct.App.1984) (holding that a judgment based merely upon suspicion, opportunity, probability, conjecture, speculation and unreasonable inferences of guilt gleaned from vague circumstances may not sustain a conviction).

■ The only evidence supporting the juvenile court's true finding regarding Count I is witness testimony from C.R. and P.B. When questioned about the damage done to the house located at 1514 Lionheart Lane, C.R. testified as follows:

Q: Okay. And did you receive any information about the damage to another house out on Lionheart Drive [sic]?

[C.R.]: Yes.

Q: And who told you this?

[C.R.]: [R.D.] and [R.H.].

. . . .

Q: What did [R.H.] say to you?

[C.R.]: He said that him—that-[R.H.] stated to me that himself and [R.D.] was throwing some rocks—well tossing some rocks at a garage door then [R.H.] or [R.D.] picked up a brick and threw it through the window.

. . . .

Q: And when [R.H.] was telling you about throwing the brick through the window I think you said they both threw a brick—

[C.R.]: No—

Q: —or who threw the brick?

[C.R.]:—[R.H.].

Q: [R.H.] threw the brick?

[C.R.]: Or . . . (indiscernible). . . .

(R. 87, 89.) Immediately following this exchange, on cross-examination, defense counsel questioned C.R. as follows:

Q: [C.R.], didn't you say [R.H.] or [R.D.] threw a brick through the window?

[C.R.]: Yes.

Q: Okay so you're not sure if it was [R.H.] or [R.D.]?

A: No.

(R. 89.) P.B. also testified regarding the damage done to the homes on Lionheart Lane. P.B. testified as follows:

Q: Let me direct your attention to the month of May 1999. Were you aware that some houses had been damaged over at Lionheart Drive [sic]?

[P.B.]: Yes.

. . . .

Q: Okay. And did there come a time in May of 1999 when you

overheard [R.H.] talking about that damage done to those houses?

[P.B.]: Yes[.] [W]e were at the bus stop and he was talking to [C.R.] saying he had been over to the houses.

. . . .

Q: And what do you recall him saying?

[P.B.]: I don't recall any exact words.

Q: Okay, but that he had been over to the houses?

[P.B.]: Yes.

Q: Do you recall him saying anything about doing anything at the houses?

[P.B.]: Mmm . . . no.

. . . .

Q: Is there anything else that you recall about that?

[P.B.]: Yes, the question that you asked me before . . . the answer is yes but I don't recall what they were saying exactly. They were talking about the damage but I don't know what they exactly were saying.

(R. 93–96.) We agree with R.H. that this evidence, standing alone, simply is not enough to support a reasonable inference that R .H. committed the offense alleged in Count I beyond a reasonable doubt. While this circumstantial evidence certainly shows that R.H. had visited the location in question during the relevant time period and further throws a degree of suspicion upon R.H., we must emphasize that a judgment based on suspicion and opportunity alone may not support a conviction.

### B. Count II—Variance Between Information and Evidence Produced at Trial

Generally, variance between the date alleged and the State's proof at trial does not mandate acquittal or reversal. *Sangsland v.. State,* 715 N.E.2d 875, 879 (Ind.Ct.App.1999), *trans. denied.* More-

over, a variance between the date alleged in a charging information and the evidence at trial is not fatal unless it misleads the defendant in the preparation of his defense or unless it subjects him to the likelihood of another prosecution for the same offense. *Id.*

Time is not an essential element of the crime of Criminal Mischief. *See* IND.CODE § 35–43–1–2; *see also Aikens v. State,* 154 Ind.App. 36, 289 N.E.2d 152, 154 (1972) (stating that generally, time is not of the essence in proving a criminal offense). Moreover, the law is well settled that where time is not an element or "of the essence of the offense," the State need not prove the precise date alleged in the indictment or information but may prove that the crime occurred at any time within the statutory period of limitations. *Sangsland,* 715 N.E.2d at 878.

Here, the State's Amended Petition Alleging Delinquency stated that the damage done to the house located at 1523 Lionheart Lane was done *"on or about May, 19 99."* (R. 28.) At trial, C.R. testified as follows:

Q: And let me direct your attention back to . . . *oh about May 1999 probably in the time period of about May 13th of that year.* Were you a friend of [R.H.] at that time?

[C.R.]: Yes.

. . . .

Q: And were you aware—did you know about a group of houses under construction over on Lionheart Lane?

[C.R.]: Yes.

Q: And that's pretty close to where you lived at that point?

[C.R.]: Yes.

Q: Let me ask you again, *let me direct your attention back to that time frame in May of 1999.* Did you and [R.H.] happen to be in one of those houses?

**318**

[C.R.]: Yes.

Q: Okay. And what happened when you were in one of those houses?

[C.R.]: Well at first we went in, then we looked around downstairs for a while. Then we went upstairs and [R.H.] started kicking in the walls.

Q: Who started?

[C.R.]: [R.H.].

. . . .

Q: [I]s that all that happened?

[C.R.]: No. then he—

Q: Well go ahead and continue I won't interrupt you.

[C.R.]: —finished kicking in the walls upstairs then he headed downstairs and started kicking in some walls.

. . . .

Q: And when you went into that house did you have permission to be in there?

[C.R.]: No.

. . . .

Q: Do you know how many holes he might have kicked?

[C.R.]: About ten.

. . . .

Q: And so when you say ten is that the total holes upstairs? Or is that the total of both upstairs and downstairs?

[C.R.]: Upstairs and downstairs.

(R. 84–87.) (Emphasis added.) Despite R.H.'s arguments to the contrary, our review of the foregoing exchange leaves us convinced that the evidence is unclear as to whether the incident occurred specifically on May 13, 1999, or rather some other date in May of 1999. Regardless of this uncertainty, however, the evidence was consistent with the time frame set forth in the State's Amended Petition Alleging Delinquency, which, in Count II, stated that the acts occurred *"on or about* May, 1999[.]" (R. 28.) (Emphasis added.) Moreover, R.H.'s arguments that he had an alibi for the date of May 13, 1999, and that he presented witness testimony that verified that he could not have been at the scene of the crime on May 13, 1999, amount to nothing more than an invitation for this Court to reweigh the evidence, and this we may not do. The juvenile court chose to believe C.R., and to disbelieve R.H.'s witnesses. We further note that R.H. failed to file an alibi defense pursuant to Indiana Code section 35–36–4–1. Thus, the trial court should have excluded all alibi evidence presented by R.H., other than his own testimony. *See Palmer v. State*, 654 N.E.2d 844, 845 (Ind.Ct.App. 1995) (holding that while an accused who improperly files a notice of alibi may still offer his own alibi testimony under his constitutional right to testify on his own behalf, he is not similarly entitled to enter into evidence third-party alibi testimony); *see also Manning v. State*, 557 N.E.2d 1335, 1337 (Ind.Ct.App.1990) (stating that a defendant is required by statute to file a notice of alibi if he intends to present alibi evidence at trial, and failure to do so without good cause necessitates that the trial court exclude testimony establishing an alibi).

▉ The State of Indiana is not required to specify the exact date or the exact time of day of an offense if the evidence available to the State does not permit such a statement of specific time or specific date. *McNeely v. State*, 529 N.E.2d 1317, 1321 (Ind.Ct.App.1988). In fact, our supreme court has stated that " 'if the evidence does not permit exact determination of the time of the offense more exactly than a period of several days, the State is required only to respond [to a defendant's alibi notice] that the offense occurred within such a period.' " *McNeely*, 529 N.E.2d at 1322 (quoting *Bruce v. State*, 268 Ind. 180, 375 N.E.2d 1042, 1058 (1978)). Moreover, it is well settled that even when an alibi defense *is* properly filed, such a filing does not impose a greater burden of proof on the State than would otherwise be required absent such a find-

ing. *See Jennings v. State,* 514 N.E.2d 836, 837 (Ind.1987); *Sangsland,* 715 N.E.2d at 879.

Here, the State never restricted itself to an exact date in its Amended Petition Alleging Delinquency, nor was it required to do so. The date alleged and proved at trial pertaining to the offense charged in Count II, a class A misdemeanor, was in accordance with the allegations set forth in the charging instrument. Moreover, the evidence shows that the offense, whether committed specifically on May 13, 1999, or some other day in May of 1999, fell within the two-year statute of limitations for this offense. *See* IND.CODE § 35-41-4-2. Finally, R.H. has failed to demonstrate that he was misled in the preparation of his defense or that he was subjected to double jeopardy because of the alleged variance. Based on the foregoing, we find no error. *Cf. Ricketts v. State,* 498 N.E.2d 1222, 1224 (Ind.1986) (holding that the trial court did not err in denying the defendant's motion for judgment on the evidence when the evidence at trial showed that the charged offenses occurred on dates different than those alleged in the charging instruments where each of the charging informations stated that the offense occurred on or about the date stated, no alibi defense was filed by the defendant, the changed dates were within the statute of limitations for the charged offenses, and the defendant failed to demonstrate any prejudice).

## II. Restitution

Finally, we address R.H.'s contention that the trial court erred in ordering him to pay the full amount of damages done to both houses on Lionheart Lane.

### Standard of Review

An order of restitution is a matter within the trial court's discretion, and we reverse only upon a showing of abuse of that discretion. *J.P.B. v. State,* 705 N.E.2d 1075, 1077 (Ind.Ct.App.1999). An abuse of discretion occurs when the trial court's determination is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable and actual deductions to be drawn therefrom. *Id.* Indiana Code section 31-37-19-5 provides that a juvenile court may order a child "to pay restitution if the victim provides reasonable evidence of the victim's loss, which the child may challenge at the dispositional hearing."

### Argument and Analysis

The State presented evidence regarding the total damages to both houses as follows:

| | |
|---|---|
| Repairs to Drywall (1523 Lionheart Lane) | $ 268.00 |
| Repairs to Broken window and Sash (1514 Lionheart Lane) | $ 70.50 |
| Replacement of Three Screens (1514 Lionheart Lane) | $ 40.00 |
| Total Damages | $ 378.50 |

R.H. did not challenge the amount of the total loss sustained by Lux–Klinker Homes, Inc., either at the fact-finding hearing or at the dispositional hearing. However, because we have found that there was insufficient evidence to support R.H.'s true finding regarding Count I, the portion of the trial court's restitution order related to the damages done to the house located at 1514 Lionheart Lane may not stand. *Cf. Polen v. State,* 578 N.E.2d 755, 758 (Ind.Ct.App.1991) (concluding that the trial court abused its discretion by ordering restitution in an amount greater than the sums involved in those crimes to which the defendant actually pleaded guilty). Accordingly, we find that the juvenile court's order requiring R.H. to pay the total damages of $378.50 is erroneous and said order is reversed and remanded with instructions that the juvenile court reduce its award to $268.00 so as to reflect only the amount of damages pertaining to the offense which was sufficiently supported by the evidence.

### Conclusion

The juvenile court's true finding as to Count I is reversed; however, the court's true finding as to Count II is affirmed.

Additionally, this cause is remanded with instructions that the juvenile court modify its restitution order in accordance with this opinion.

Affirmed in part, reversed in part, and remanded with instructions.

RILEY, J., and BARNES, J., concur.